1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STELLA MAE HILL,                          Case No. 2:24-cv-1751-CSK

12                     Plaintiff,               ORDER ON DEFENDANT'S MOTION TO
                                                DISMISS AND MOTION TO TRANSFER
13          v.                                  VENUE

14    GERGUN TRANSPORTATION, INC,                (ECF No. 11)

15                     Defendant.

16

17          Plaintiff Stella Mae Hill asserts California state law claims for failure to pay final

18    wages upon termination, failure to reimburse business expenses, retaliation, and

19    wrongful termination in violation of public policy against Defendant Gergun

20    Transportation, Inc. and 25 Doe Defendants.[1] Compl. (ECF No. 1 at 9-20.) Currently

21    before the Court is Defendant's motion to dismiss for lack of personal jurisdiction,

22    improper venue, and failure to state a claim. Def. Mot. (ECF No. 11.) A hearing was held

23    on Defendant's motion to dismiss on August 27, 2024. (ECF No. 15.)

24          For the reasons that follow, Defendant's motion to dismiss is GRANTED IN PART

25    and DENIED IN PART. The Court finds it has personal jurisdiction over Defendant and

26    venue is proper in this district. Further, Plaintiff's claims for failure to pay final wages

27    _____

28    [1]   This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) on the
          consent of all parties. (ECF Nos. 7, 9, 10.)

                                                  1

under California Labor Code § 201 and failure to reimburse business expenses under California Labor Code § 2802 may proceed. The retaliation claim under California Labor Code § 1102.5 and the wrongful termination claim are dismissed.

## I.    BACKGROUND

### A.    Facts[2]

Plaintiff is a California citizen who resides in the City of Sacramento. Compl. ¶ 1. She is a truck driver who possesses a Commercial Driver's License and a security clearance that allows her to deliver or pick-up cargo at military bases. Compl. ¶ 11.

Defendant is engaged in the transportation and trucking industry. Compl. ¶ 2. Defendant incorporated in California on May 15, 2014. *See* Oleg Gherghi Decl. (ECF No. 11-2) at 8. However, on August 23, 2023, Defendant filed Articles of Domestication with the South Carolina Secretary of State and, on September 26, 2023, dissolved the California corporation. *Id.* ¶¶ 2-4, Exh. A (California Certificate of Dissolution), Exh. B (South Carolina Articles of Domestication). During the events of this litigation, Defendant was a South Carolina corporation with its principal place of business in Piedmont, South Carolina. Compl. ¶ 2. According to a July 8, 2024 Statement of Information on file with the California Secretary of State, Defendant maintains an office in California at 3602 West Capitol Ave., West Sacramento, CA, 95691. Gregory P. Wong Decl. (ECF No. 12-2) Exh. B.

On March 4, 2024, Plaintiff went to Defendant's West Sacramento office (the same office identified in Defendant's 2024 Statement of Information filed with the California Secretary of State) and submitted a job application. Compl. ¶ 12.[3] Defendant's

---

[2]   These facts derive from the Complaint (ECF No. 1) and supplemental materials from the parties' supporting declarations and exhibits as pertains to the personal jurisdiction and venue issues. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (courts may consider facts outside of the pleadings to determine personal jurisdiction); *Kelly v. Qualitest Pharm., Inc.*, 2006 WL 2536627, at *7 (E.D. Cal. Aug. 31, 2006) (courts may consider facts outside of the pleadings to determine venue).

[3]   The Court notes that in Plaintiff's declaration, she states that she went to Defendant's

signage was posted in this office, and Defendant uses this office to recruit, hire, assign, and manage its employees. Hill Decl. ¶ 4. On this date, Plaintiff interviewed with one of Defendant's representatives in the office; was hired; was told her first route would begin with a delivery to a military facility in Texarkana, Texas; and was told her assignments would begin and end in California. Hill Decl. ¶ 3. Defendant assigned Plaintiff a company truck and instructed her to pick up cargo from one of Defendant's customers in Stockton, California. Compl. ¶ 14; Hill Decl. ¶ 4.

After Plaintiff transported the cargo from Stockton to Texarkana, she was instructed to transport additional loads on a route that ran through Kansas, Arkansas, and Michigan, terminating in South Carolina. Compl. ¶ 14; Hill Decl. ¶ 5. Throughout this run, Plaintiff observed an issue with the truck's braking system. Compl. ¶ 15. An inspection at a truck stop in Frenchtown, Michigan led Plaintiff to believe the safety of the vehicle was compromised and was in violation of Department of Transportation regulations. Compl. ¶ 15. Plaintiff called Defendant to relay the results of the inspection and to request permission to complete the repairs at the Frenchtown truck stop. Compl. ¶ 16. Defendant denied this permission, instead instructing Plaintiff to drive the vehicle to Defendant's facility in Highmont, South Carolina. Compl. ¶¶ 16-17. Plaintiff arrived at Defendant's facility on March 15, 2024, at which point Defendant decided to terminate her because of her complaints about the unsafe working condition of the truck and her request to have the vehicle repaired at the Frenchtown truck stop. Compl. ¶ 17.

Plaintiff alleges Defendant fired her on March 15, 2024, did not pay her final wages at this time, and left her "stranded across the country from her home without any

---

West Sacramento office in April 2024, and reported for duty in March 2024 to the West Sacramento office. Stella Mae Hill Decl. (ECF No. 12-1) ¶¶ 3, 4. All of the other facts pled in the Complaint indicate Plaintiff applied, was hired, and fired in March 2024. *See* Compl. Due to the requirement that the Court resolve conflicts in the record in Plaintiff's favor to decide whether a prima facie case for personal jurisdiction exists, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), the Court resolves this conflict in the record to find that Plaintiff first went to Defendant's West Sacramento office in March 2024 as alleged in the Complaint.

money." Compl. ¶ 18. Defendant also failed to reimburse Plaintiff for the cost of a tire repair "(that she did not damage)," did not return Plaintiff's personal effects from the truck, and did not reimburse Plaintiff's expenses for her travel back to California. *Id.* Plaintiff alleges she was subject to the control and direction of Defendant in the performance of her duties because she:  drove a vehicle owned and assigned to her by Defendant under Defendant's name; was given a schedule of deliveries to make and instructed as to the routes she was to follow; and was told where and when she could stop for breaks, where she could refuel, and where she could go to address maintenance issues. Compl. ¶ 13. Plaintiff alleges she performed work that was within the scope of Defendant's usual course of business because she was delivering cargo to Defendant's customers under Defendant's name and using Defendant's vehicle. *Id*. In this way, Plaintiff alleges she was an employee, and Defendant misclassified her as an independent contractor. *Id*.

        Because of the nature of Defendant's business and work performed by its employees, Plaintiff alleges Defendant "is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by [a California court sitting in Sacramento] consistent with traditional notions of fair play and substantial justice." Compl. at ¶ 8. In addition to the facts of her case described above, Plaintiff points to a July 1, 2024 job posting recruiting truck drivers in Sacramento that includes routes to California. Wong Decl., Exh A.

        **B.    Procedural Posture**

        On May 10, 2024, Plaintiff filed her Complaint in Sacramento County Superior Court. (ECF No. 1 at 9.) Defendant was served with process on May 13, 2024. (*Id.* at 2.) On June 20, 2024, Defendant removed the action to federal court on diversity jurisdiction grounds. (*Id.* at 1-3.) On July 16, 2024, this Court noted the docket did not reflect that Defendant's response to the Complaint had been filed, citing to Federal Rule of Civil Procedure 81(c)(2)(C). (ECF No. 6.)

1    On July 18, 2024, Defendant filed the instant motion to dismiss. (ECF No. 11.)

2    Plaintiff filed her opposition on July 30, 2024 (ECF No. 12), and Defendant did not file a

3    reply. The Court held a hearing by Zoom on August 27, 2024. (ECF Nos. 14, 15.)

4    **II.    LEGAL STANDARDS**

5         **A.    Time for Response to the Complaint in Removal Cases**

6    Federal Rule of Civil Procedure 81 states that for actions removed from state

7    court, a defendant who did not answer before removal must answer or present other

8    defenses within the longest of these periods: (A) 21 days after receiving—through

9    service or otherwise—a copy of the initial pleading stating the claim for relief; (B) 21 days

10   after being served with the summons for an initial pleading on file at the time of service;

11   or (C) 7 days after the notice of removal is filed. Fed. R. Civ. P. 81(c)(2).

12        **B.    Personal Jurisdiction under Rule 12(b)(2)**

13   Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense

14   and request dismissal of the suit. Fed. R. Civ. P. (12)(b)(2). However, it is the plaintiff

15   who bears the burden to establish the court has personal jurisdiction over this defendant.

16   *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). To determine

17   whether a court has personal jurisdiction over a nonresident defendant, it examines the

18   forum state's long-arm statute and federal due process. *Axiom Foods, Inc. v. Acerchem*

19   *International, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).

20   In resolving jurisdictional issues, the court may consider evidence presented in

21   affidavits and may order discovery. *Fred Martin Motor*, 374 F.3d at 800. When no

22   evidentiary hearing is held, a plaintiff is only required to make a prima facie showing of

23   jurisdictional facts to withstand the motion. *Id.* The Court takes the plaintiff's facts as true

24   and resolves conflicts in the record in plaintiff's favor for the purposes of deciding

25   whether a prima facie case for personal jurisdiction exists under a Rule 12(b)(2) motion.

26   *Id.*

27        **C.    Venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a)**

28   Rule 12(b)(3) and 28 U.S.C. § 1406(a) authorize the court to entertain a challenge

to an action on grounds that venue is improper. The court may consider supplemental written materials and consider facts outside the pleadings in adjudicating a venue question. *Kelly v. Qualitest Pharm., Inc.*, 2006 WL 2536627, at *7 (E.D. Cal. Aug. 31, 2006).

If the court determines that venue is improper, it may dismiss the case, or, if the interests of justice require, the court may transfer the case to any district in which it properly could have been brought. 28 U.S.C. § 1406(a). The decision to transfer rests in the court's discretion. *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### D.    Failure to State a Claim under Rule 12(b)(6)

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). When considering whether a claim has been stated, the court must accept the well-pleaded factual allegations as true and construe the complaint in the light most favorable to the non-moving party. *Id*. However, the court is not required to accept as true conclusory factual allegations contradicted by documents referenced in the complaint, or legal conclusions merely because they are cast in the form of factual allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

## III.    DISCUSSION

### A.    Defendant's Late Response

Defendant states it was served with process on May 20, 2024 and removed to federal court on June 20, 2024 under 28 U.S.C. § 1446(b) and (c). (ECF No. 1 at 2.) Defendant confirmed at the hearing that it did not file a response to the Complaint prior to removing the action to federal court. Thus, under Rule 81, Defendant's response was due 7 days after the notice of removal was filed, or June 27, 2024. Fed. R. Civ. P. 81(c)(2)(C). Defendant did not file its motion to dismiss until July 18, 2024. (ECF No. 11.) This is well beyond any of the time periods allowed by Rule 81(c).

Defendant's motion to dismiss is untimely, as Defendant conceded at the hearing. *See* Fed. R. Civ. P. 81(c)(2). Plaintiff did not, however, object to timeliness on the papers or at the hearing. Plaintiff filed her opposition to the motion and Plaintiff's counsel appeared at the hearing for argument. Given that the parties may stipulate to extend the deadline for Defendant's response to the Complaint for up to 28 days, Plaintiff did not object to the timeliness of Defendant's response, and there is no prejudice to Plaintiff, the Court sua sponte grants Defendant leave to file its motion to dismiss outside of the proscribed time period. *See* Fed. R. Civ. P. 6(b)(2); E.D. Cal. Local Rule 144. The Court addresses Defendant's motion on the merits.

### B.    Personal Jurisdiction

California's long-arm statute allows courts in the state to exercise personal jurisdiction "not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. Proc. §410.10. Thus, the inquiry for California courts centers on whether exercising personal jurisdiction comports with federal due process. *Fred Martin Motor*, 374 F.3d at 800-01 ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same.").

Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has minimum contacts with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 351 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there. *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). "Alternatively, a court may exercise jurisdiction over 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quotations omitted). These different bases for personal jurisdiction are often referred to as "general" and "specific"

1   jurisdiction. *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct.

2   1773, 1779-80 (2017)).

3          Here, Plaintiff does not argue Defendant has contacts with California that were so

4   continuous and systematic as to render it at home, instead focusing on Defendant's

5   specific actions in California. *See* Pl. Opp. at 2-9. Thus, the Court considers whether

6   Defendant's contacts with California during the relevant time sufficiently support the

7   exercise of specific personal jurisdiction over Defendant. *See Glob. Commodities*, 972

8   F.3d at 1107 (focusing on specific jurisdiction given plaintiff's arguments and cited facts).

9          The test for analyzing specific personal jurisdiction examines whether:

10         1.  The non-resident defendant purposefully directed its
              activities or consummated some transaction with the

11            forum or resident thereof, or performed some act by which
              it purposefully availed itself of the privilege of conducting

12            activities in the forum, thereby invoking the benefits and
              protections of its laws;

13
           2.  The plaintiff's claim arises out of or relates to the
              defendant's forum-related activities; and

14

15         3.  The exercise of jurisdiction is reasonable.

16   *Fred Martin Motor*, 374 F.3d at 802. For tort claims, courts use the "purposeful direction"

17   prong of this test, while contract claims focus on the "purposeful availment" prong. *Doe*

18   *v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024). Plaintiff has the

19   burden on the first two prongs which, if satisfied, shifts the burden to Defendant so it can

20   "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Id.*

21   (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

22         Here, Plaintiff asserts claims for failure to pay final wages upon termination (Cal.

23   Labor Code § 201), failure to reimburse business expenses (Cal. Labor Code § 2802),

24   retaliation (Cal. Labor Code § 1102.5(b)), and wrongful termination in violation of public

25   policy. Courts construe these claims as arising in tort, and so use the purposeful

26   direction test for personal jurisdiction issues. *See Ting v. Orbit Commc'n Co.*, 105 F.3d

27   666 (9th Cir. 1997) (applying purposeful direction test to a California tort claim of

28   wrongful termination in violation of public policy); *Yocum v. Rockwell Med. Techs., Inc.*,

8

1    2012 WL 2502701, at *4-6 (S.D. Cal. June 27, 2012) (applying purposeful direction test

2    to claims of wrongful termination and Cal. Labor Code § 201 failure to pay wages);

3    *Green v. Hepta Run, Inc*., 2020 WL 1638273, at *2 (C.D. Cal. Apr. 2, 2020) (applying

4    purposeful direction test to failure to reimburse business expenses under Cal. Labor

5    Code § 2802); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 592 (N.D. Cal. 2022)

6    (noting that while wrongful retaliation claim under Cal. Labor Code § 1102.5 was not a

7    tort per se, use of the purposeful direction test was proper and in line with other

8    California courts).

9                              1.    Purposeful Direction

10        A "forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor

11   must be based on intentional conduct by the defendant that creates the necessary

12   contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). This requires courts

13   to focus on the defendant, the forum, and the litigation. *Id.* at 287; *WebGroup*, 93 F.4th

14   at 452 (the purposeful direction test considers the "effects" of the defendant's acts, as

15   set forth in *Calder v. Jones*, 465 U.S. 783 (1984)). Under the *Calder* effects test, the

16   defendant must have committed an intentional act, expressly aimed at the forum state,

17   causing harm the defendant knows is likely to be suffered in the forum state. *Id.* As the

18   Ninth Circuit has noted, the application of the purposeful direction test varies from case

19   to case and "depends, to a significant degree, on the specific type of tort or other

20   wrongful conduct at issue." *Fred Martin Motor*, 374 F.3d at 807.

21        The Supreme Court in *Walden* revisited the facts of *Calder*, where the

22   defendants, Florida residents, were being sued for libel in California by a California

23   resident. 571 U.S. at 287. The Supreme Court noted the *Calder* defendants had

24   sufficient connection with California because they interviewed California sources for the

25   article, wrote about the plaintiff's California activities, and caused the plaintiff reputational

26   injury in California by widely circulating the article in the state. *Id.* (citing *Calder*, 465 U.S.

27   at 788-89). The *Walden* Court reaffirmed that this adequately constituted purposeful

28   direction, given the *Calder* defendants' intentional acts targeted California and given the

                                                9

1  plaintiff suffered her injuries in California.[4] *Id.*

2        Here, like *Calder*, Plaintiff has made a prima facie showing that Defendant

3  purposefully directed its activities at California, such that the first prong of the specific

4  personal jurisdiction test is met. *See Fred Martin Motor*, 374 F.3d at 802. It is true that,

5  before Defendant hired Plaintiff on March 4, 2024, it had dissolved the California

6  Corporation and reformed in South Carolina. Gherghi Decl. ¶¶ 2-4, Exh. A (Sept. 26,

7  2023 California Certificate of Dissolution), Exh. B (Aug. 23, 2023 South Carolina Articles

8  of Domestication). However, Defendant continued to maintain its license to do business

9  in California after incorporating in South Carolina. Wong Decl. Exh. B (July 8, 2024

10  Statement of Information filed with the California Secretary of State). Defendant also

11  continued to maintain offices in California, from which it recruits California truck drivers,

12  assigns routes to its drivers, and provides vehicles for the assigned jobs. *See* Compl.

13  ¶¶ 10, 14; Hill Decl. ¶¶ 3-4; Wong Decl. ¶¶ 2-3 & Exh. A-B

14        For additional support, Plaintiff also provides a July 1, 2024 job posting for a

15  "Class A [Over the Road] Driver Dedicated Lanes – Drop and Hook (Sacramento)" that

16  displays a location in North Sacramento, California, and lists routes that include a drop-

17  off in San Jose, California. Wong Decl. Exh. A. Plaintiff also points to Defendant's July 8,

18  2024 Statement of Information showing it maintains a "California Office of Corporation"

19  at "3602 West Capitol Ave., West Sacramento, CA, 95691." Wong Decl. Exh. B.[5] These

20  facts demonstrate Defendant's intentional acts expressly aimed at California. *See*

21  *Walden*, 571 U.S. at 286-88; *see also Leitzbach v. Atlas Van Lines, Inc.*, 2017 WL

22  ───────────────

[4]   As to the defendant in *Walden*, the Supreme Court held that there was no personal
23  jurisdiction in Nevada over the Georgia police officer because none of the defendant's
conduct occurred in Nevada and the only ties to Nevada was the plaintiffs' residence.
24  571 U.S. at 287-89.

[5]   Defendant's assertion that when Plaintiff first began working for Defendant in March
25  2024, "the only office space that Defendant maintained was [] in Piedmont, South
Carolina" (Gherghi Decl. ¶ 6), is directly contradicted by Defendant's own July 2024 filing
26  with the California Secretary of State. *See* Wong Decl. Exh. B (signed by Oleg Gherghi
on July 8, 2024). It is concerning that the individual who made this assertion is the same
27  individual who recently filed Defendant's Statement of Information with the California
Secretary of State.

28

1    11617904, at *3 (C.D. Cal. Feb. 22, 2017) (finding purposeful direction where the

2    defendant shipping company, headquartered and incorporated outside of California but

3    licensed to do business in California, employed California drivers to serve its California

4    business interests).

5           Plaintiff's specific interactions with Defendant further supports a finding of

6    purposeful direction. Plaintiff alleges she went to Defendant's West Sacramento office;

7    noted Defendant's signage in this office; submitted a job application, interviewed with

8    Defendant's representative and was hired in Defendant's West Sacramento office; was

9    given her first assignment in Defendant's West Sacramento office upon hiring; and was

10   directed to pick up cargo for one of Defendant's customers from a Stockton, California

11   facility. Compl. at ¶¶ 3-4, 11-14; Hill Decl. ¶ 4. This West Sacramento office is the same

12   office identified in Defendant's July 8, 2024 Statement of Information. *See* Wong Decl.

13   Exh. B; Compl. ¶ 12; Hill Decl. ¶¶ 3-4. These facts further support a connection between

14   Defendant, California, and Plaintiff's claims. *See Axiom Foods*, 874 F.3d at 1069-70; *see*

15   *also McGechie v. Atomos Ltd.*, 2024 WL 1054924, at *4 (E.D. Cal. Mar. 11, 2024)

16   (collecting cases and finding first two prongs of the purposeful direction test satisfied

17   where the defendant hired the plaintiff in California and used her specific skillset to

18   further its interests and conduct its business in California).

19          As to whether Defendant's acts caused harm it knew was likely to be suffered in

20   California, Plaintiff has again made out a prima facie case. Critically, the Ninth Circuit

21   has stated that only "a jurisdictionally sufficient amount of harm" need be suffered in the

22   forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

23   1199, 1207 (9th Cir. 2006) (reminding that the "brunt" of the harm need not be suffered

24   in the forum state:  "[I]t does not matter that even more harm might have been suffered

25   in another state."). Here, Defendant would have known that drivers it hires in California

26   would suffer harm if, like Plaintiff, they were promised routes that would begin and end in

27   California, but then were terminated out of state and not paid their final wages and

28   reimbursements upon termination. *See* Compl. ¶¶ 17-18; Hill Decl. ¶ 3. Courts in the

1    Ninth Circuit have found a jurisdictionally sufficient amount of harm under similar

2    circumstances. *See Davis v. NIH Federal Credit Union*, 2013 WL 2147468, at *7 (N.D.

3    Cal. May 15, 2013) (finding jurisdictionally sufficient harm where the plaintiff had

4    connections with the forum state, was hired by the defendant while in the forum state,

5    was required to move to a different state for the job, was fired while performing her

6    duties in the non-forum state, and returned to the forum state after being fired).

7        The Court concludes that these facts show purposeful direction on Defendant's

8    part:  intentional acts, expressly aimed at California, causing harm Defendant knows is

9    likely to be suffered in California. *See WebGroup*, 93 F.4th at 452 (citing *Calder*, 465

10    U.S. at 783); *Davis*, 2013 WL 2147468 at *7.

11                    2.    <u>Affiliation of Claims to Defendant's Forum-Related Activities</u>

12        In addition to inquiring whether the defendant satisfies the purposeful direction (or

13    availment) prong, the forum State may exercise specific personal jurisdiction in cases

14    where the plaintiff's claims "arise out of or relate to the defendant's contacts" with the

15    forum. *Ford Motor Company*, 592 U.S. at 359. "There must be an affiliation between the

16    forum and the underlying controversy, principally, [an] activity or an occurrence that

17    takes place in the forum State and is therefore subject to the State's regulation." *Bristol-*

18    *Myers*, 582 U. S. at 262 (quotations omitted). After *Ford Motor*, courts in the Ninth Circuit

19    no longer require a showing of "but for" causation to determine whether the claim arises

20    out of the non-resident defendant's forum-related activities. *See Ayla, LLC v. Alya Skin*

21    *Pty. Ltd.*, 11 F.4th 972, 983 n.5 (9th Cir. 2021).

22        Here, this action both arises out of and relates to Defendant's contacts with

23    California. Defendant interviewed and hired Plaintiff (a California resident) in Defendant's

24    California office; promised that Plaintiff's routes would begin and end in California;

25    assigned Plaintiff a truck in California; gave Plaintiff her first assignment in California;

26    instructed her to pick up cargo in California; and used her specialized skillset

27    (commercial driving and security clearance) to transport goods for Defendant's

28    customers in California. *See* Compl. ¶¶ 1, 11, 12, 14; Hill Decl. ¶¶ 3-4. This is in line with

other cases finding a sufficient nexus between an employer's hiring in the forum and adverse employment actions, even where some of the events giving rise to the claim occurred out of the forum state. *See Soto v. United Airlines, Inc.*, 2024 WL 2260362, at *5 (E.D. Cal. May 17, 2024) (finding tort claims related to the defendant's employment of the plaintiff in California and its conducting of business in the state, despite the fact that defendant's "employment decisions and policies" being challenged in the lawsuit were adopted and implemented at defendant's out-of-state headquarters); *Franey v. Am. Battery Sols. Inc.*, 2022 WL 4280638, at *10 (N.D. Cal. Sept. 15, 2022) (finding the plaintiff's claims arose out of the defendants' conducting business in the state and employing the plaintiff to serve those business interests).

3.   <u>Reasonableness of Exercise of Jurisdiction</u>

Finally, the specific personal jurisdiction test requires that the exercise of jurisdiction be reasonable. *Axiom Foods*, 874 F.3d at 1068. This prong considers: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ayla*, 11 F.4th at 984. Defendant has the burden to "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Axiom Foods*, 874 F.3d at 1069.

Here, the first, fourth, fifth, and sixth factors weigh in Plaintiff's favor. The purposeful interjection factor is "analogous to the purposeful direction" factor. *Ayla*, 11 F.4th at 984. As discussed above, Defendant has continued to inject itself into California by soliciting business and hiring drivers here to serve its customers, even after dissolving its California corporation in 2023 and reincorporating in South Carolina. Compl. at ¶¶ 3-4 and 11-14; Hill Decl. ¶¶ 3-5; Wong Decl., Exhs. A and B. California has a strong interest in adjudicating this dispute, given Plaintiff's California residence, Defendant's actions

13

taken in and directed at California, and at least part of the injury occurred in California. *See Franey*, 2022 WL 4280638, at *10. Regarding judicial efficiency, the Court is already familiar with the dispute and, given the Court's decision on Defendant's Rule 12(b)(6) arguments, the parties can now turn to the merits of the case. *See id*. Finally, litigating in California is important to Plaintiff given her residence here. *See id*.

The second and seventh factors weigh in Defendant's favor. Having to litigate in California would be more burdensome for Defendant than litigating in South Carolina. However, "[u]nless such inconvenience is so great as to constitute a deprivation of due process it will not overcome clear justification for the exercise of jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995). The availability of technology permitting remote legal processes, including the hearing on this motion to dismiss, "militates against affording this factor substantial weight." *Franey*, 2022 WL 4280638, at *10. It is also clear that this case could have been brought in South Carolina, given Defendant's incorporation and headquarters in that state.

The third factor appears neutral, as the Court is not aware of any conflict with Defendant's state.

Balancing all the factors, the Court finds Defendant has not "present[ed] a compelling case" that the exercise of jurisdiction would be unreasonable. *Axiom Foods*, 874 F.3d at 1069.

### C.    Venue

Where federal jurisdiction is founded on diversity of citizenship, venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b).

1    Here, Defendant asserts that venue is not proper in the Eastern District of

2    California under 28 U.S.C. § 1391(b)(1) because it is the only defendant and it resides in

3    South Carolina. Regarding residency, defendant entities are deemed to reside "in any

4    judicial district in which such defendant is subject to the court's personal jurisdiction with

5    respect to the civil action in question." 28 U.S.C. § 1391(c)(2). As a result, courts have

6    found venue proper when the court "can permissibly exercise personal jurisdiction over

7    [the defendant] in this specific matter." *Evanston Ins. Co. v. W. Cmty. Ins. Co.*, 13 F.

8    Supp. 3d 1064, 1072 (D. Nev. 2014) (noting that "the personal jurisdiction analysis and

9    the venue analysis effectively collapse into a single inquiry"). For § 1391(b)(1) purposes,

10   venue is proper in this district because Defendant is deemed to reside in California

11   where the Court has found that has personal jurisdiction over Defendant.

12   Venue in this district is also proper under § 1391(b)(2) because a substantial part

13   of the events occurred in this district. Plaintiff applied for, interviewed, was hired, and

14   was assigned a truck and her first assignment by Defendant in West Sacramento, which

15   is located in this district. *See* Compl. ¶¶ 10, 12-14; Hill Decl. ¶¶ 3-4. Plaintiff picked up

16   cargo from Defendant's customer in Stockton, which is also located in this district. *See*

17   Compl. ¶ 14; Hill Decl. ¶ 4. In addition, Plaintiff suffered some harm in California when

18   Defendant promised her a route that would begin and end in California, but fired her

19   when she arrived in South Carolina and required her to travel back home to California at

20   her own expense. *See* Compl. ¶¶ 17-18; Hill Decl. ¶ 3. Regarding where a "substantial

21   part" of the case has occurred, the Ninth Circuit has held this venue factor is satisfied

22   when "at least one of the harms suffered by plaintiffs was felt" in the venue. *See Myers v.*

23   *Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *see also Rodriguez v.*

24   *California Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000) (noting that, for

25   venue purposes, subsection (b)(2) does not require a majority of the events to have

26   occurred in district, nor that the events in that district predominate).

27   Therefore, the Court concludes that venue is proper in this district under

28   28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

1

**D.     Extraterritorial Application of California Law**

2       Defendant moves to dismiss all claims against it on the grounds that it is not

3   required to adhere to the California labor and employment laws asserted by Plaintiff.[6]

4   Plaintiff opposes, arguing that Defendant's argument is misplaced because Plaintiff's

5   claim for wrongful termination in violation of public policy is based on a federal

6   regulation. Further, Plaintiff contends California state and federal courts have found that

7   California law applies to out of state parties in similar circumstances.

8       The parties' arguments highlight two principles regarding the extraterritorial

9   application of California law. On one hand, courts have placed the onus on companies

10   conducting business in numerous states to be "aware of and comply with the law of a

11   state in which it chooses to do business." *Oman, et al. v. Delta Air Lines, Inc.*, 9 Cal.5th

12   762, 773 (2020). On the other hand, the California Supreme Court has noted a

13   presumption against applying California law to non-California persons or activities.

14   *Sullivan v. Oracle*, 51 Cal.4th 1191, 1207 (2011) ("However far the Legislature's power

15   may theoretically extend, we presume the Legislature did not intend a statute to be

16   operative, with respect to occurrences outside the state [] unless such intention is clearly

17   expressed or reasonably to be inferred "from the language of the act or from its purpose,

18   subject matter or history.") (quotations omitted). To determine whether a particular law

19   applies extraterritorially, the court must perform a "separate analysis [on each claim] to

20   determine whether the California Supreme Court would apply California law [] under the

21   circumstances of this case." *Bernstein v. Virgin American Airlines, Inc.*, 3 F.4th 1127,

22   1136 (9th Cir. 2021).

23       In 2020, the California Supreme Court provided direction as to the extraterritorial

24   reach of one of California's wage and hour statutes in *Ward v. United Airlines, Inc.*, 9

25   Cal.5th 732 (2020). In *Ward*, a class of airline employees alleged their employer failed to

26   provide wage statements in compliance with California law. *See id.* This California

27

28
       [6]   The Court notes that its analysis of the extraterritorial application of California law is
       not a finding regarding Plaintiff's employment status.

1    statute contained no explicit language specifying its intended geographic scope. *Id.* at

2    752. The defendant argued that because these employees performed most of their work

3    outside of California, it would be an unintended extraterritorial application to apply

4    California state law to these employees. *Id.* at 750. The plaintiffs argued that because

5    they lived in and were paid in California, California law presumably applied. *Id.* (citing

6    *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996) (noting that

7    courts ordinarily interpret California statutes apply "to conduct occurring anywhere within

8    California's borders")).

9         The California Supreme Court found "an element of truth to both views," which

10   suggested that framing the issue solely under territorial principles was not "particularly

11   helpful." *Ward*, 9 Cal.5th at 750 ("Unless we are prepared to conclude that any

12   extraterritorial effect at all is sufficient to bar application of California law, or, conversely,

13   that any intraterritorial effect at all is sufficient to justify it, we cannot resolve this case

14   based on territorial presumptions alone."). After reviewing relevant precedent, the

15   California Supreme Court concluded the focus should be on the "kinds of California

16   connections [that] will suffice to trigger the relevant provisions of California law," keeping

17   in mind that "the connections that suffice for purposes of one statute may not necessarily

18   suffice for another." *Id.* at 752.

19        The California Supreme Court then examined the specific California wage and

20   hour statute at issue in *Ward*, noting its "aims and its role in the surrounding statutory

21   scheme," the increment of work covered by the statute, the proportion of work performed

22   in California, and the general liberal construction of wage and hour laws in favor of

23   worker protections. *Id.* at 752-54. The court noted the aims of the statute at issue, the

24   increment of work covered, and liberal construction all "logically depends on whether the

25   employee's principal place of work is California." *Id.* at 754. Relevant to the location of

26   the work performed, the Court stated:

27              To determine how far these protections extend, we return to
               the central insight that has long guided courts seeking to
28              discern the geographic scope of legislative enactments: that

1   the Legislature ordinarily does not intend for its enactments to
2   create conflicts with other sovereigns. We can infer from this
    that the Legislature intended for [this wage statute] to apply to
3   workers whose work is not performed predominantly in any
    one state, provided that California is the state that has the
4   most significant relationship to the work. **For interstate**
    **transportation workers and others who do not work more**
5   **than half the time in any one state, we conclude this**
    **principle will be satisfied if the worker performs some**
6   **work here and is based in California, meaning that**
    **California serves as the physical location where the**
7   **worker presents himself or herself to begin work**.

8   *Id.* at 755 (emphasis added). The court concluded that, as applied to the particular

9   California wage and hour statute at issue, "workers are covered if they perform the

10  majority of their work in California; but if they do not perform the majority of their work in

11  any one state, they will be covered if they are based for work purposes in California." *Id.*

12  at 755-56.

13      With these principles in mind, the Court examines Plaintiff's claims to decide

14  whether each claim was intended to apply extraterritorially.

15                  1.      Payment of Final Wages, Cal. Labor Code § 201

16      California Labor Code § 201(a) states, "If an employer discharges an employee,

17  the wages earned and unpaid at the time of discharge are due and payable

18  immediately." Section 203 sets forth penalties for the failure to comply with § 201.

19  Courts have recognized that this statute does not contain language expressly indicating

20  the California legislature's intent for it to apply extraterritorially. *See Poehls v. ENSR*

21  *Consulting & Eng'g*, 2006 WL 8431770, at *22 (C.D. Cal. Aug. 31, 2006) ("There is

22  nothing in Labor Code §§ 201 and 203 from which the legislature's intent to give

23  extraterritorial effect to those statutes can be discerned."). Thus, the Court examines

24  what can be inferred from the statute's language, purpose, subject matter, and history,

25  as applied to Plaintiff's case. *See Sullivan*, 51 Cal. 4th at 1207.

26      Viewing the allegations in the light most favorable to Plaintiff as required, *Mollett*,

27  795 F.3d at 1065, the Court finds Plaintiff fits squarely into *Ward's* definition of an

28  interstate transportation worker "who [does] not work more than half the time in any one

1    state," who "performed some work in California," and who used California as "the

2    physical location where [she] presents [] herself to begin work." *Ward*, 9 Cal.5th at 755.

3    Plaintiff alleges she was hired by Defendant out of its West Sacramento office, was

4    given her first route and truck upon hiring in California, was instructed to load cargo from

5    one of Defendant's customers at a facility in Stockton, and was told her assignments

6    would begin and end in California. Compl. ¶¶ 12-14; Hill Decl. ¶¶ 3-4. Further, Plaintiff's

7    route here began in California, took her through Texas, Kansas, Arkansas, Michigan,

8    and South Carolina; that Defendant terminated her on March 15, 2024 when she arrived

9    at Defendant's facility in South Carolina; and that Defendant did not pay her final wages

10   upon being terminated. Compl. ¶¶ 14, 17, 18; Hill Decl. ¶ 5.

11          Further, the statutory scheme in § 201 is similar to the wage and hour statute

12   examined in *Ward*—as was explicitly found by the Ninth Circuit in a case similar to

13   Plaintiff's case. In *Bernstein v. Virgin America, Inc.*, the plaintiffs (flight attendants for an

14   interstate airline) did not perform a majority of their work in any state but were based in

15   California. 3 F.4th 1127, 1143 (9th Cir. 2021). The Ninth Circuit concluded the principles

16   behind § 201 analogous to those behind the statute at issue in *Ward*. *Id.* (stating that the

17   waiting time penalties of § 201 pertains to "a tangible object that the employer must give

18   to the employee," is "technical in nature" because it specifies "the time in which an

19   employer must remit an employee's wages after separation from employment"). Thus,

20   the Ninth Circuit concluded that like the California wage and hour statute in *Ward*,

21   California Labor Code § 201 presented "the kinds of California connections" that sufficed

22   to find extraterritorial application for the flight attendant plaintiffs in *Bernstein*. *Id.* at 1143-

23   44.

24          Under *Ward*, California Labor Code § 201 applies to Plaintiff because though she

25   does not perform a majority of her work in any state, she is based in California, was

26   hired in California by Defendant, and presented herself to Defendant in California to

27   begin her work. *See Ward*, 9 Cal. 5th at 755-56. Under *Bernstein*, California Labor Code

28   § 201 applies to Plaintiff because it presents the "the kinds of California connections"

                                             19

1 | that suffice for extraterritorial application. *See Bernstein,* 3 F.4th at 1143-44.

2 |                  2.        <u>Reimbursement of Business Expenses, Cal. Labor Code § 2802</u>

3 |       California Labor Code § 2802(a) requires an employer to "indemnify his or her

4 | employee for all necessary expenditures or losses incurred by the employee in direct

5 | consequence of the discharge of his or her duties[.]" The statute defines "necessary

6 | expenditures or losses" to include "all reasonable costs." Cal. Labor Code. § 2802(c).

7 | Here, Plaintiff alleges that when Defendant fired her on March 15, 2024, it failed to

8 | reimburse her for the cost of a tire repair for Defendant's truck, did not return Plaintiff's

9 | personal effects from the truck, and did not reimburse Plaintiff's expenses for her travel

10 | back to California. Compl. ¶ 18.

11 |       Courts have found repair costs and travel expenses fall within § 2802, requiring

12 | reimbursement. *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 567 (2007)

13 | (noting § 2802's requirement to "indemnify its employees for expenses they necessarily

14 | incur in the discharge of their duties" includes reimbursement for "the automobile

15 | expenses they actually and necessarily incur in performing their employment tasks,"

16 | including vehicle repair and travel costs); *Mayen v. Cal Cent. Harvesting, Inc.*, 2022 WL

17 | 3587602, at *8 (E.D. Cal. Aug. 22, 2022) (finding employer's alleged failure to reimburse

18 | for travel to be a "necessary expenditure" that could form the basis of a plausible § 2802

19 | claim).

20 |       As to Plaintiff's claim concerning reimbursement for her personal effects, the

21 | Court finds the allegations in the Complaint sufficient to fall within the statute's language.

22 | Section 2802 requires indemnification for "losses incurred in direct consequence of the

23 | discharge of her duties." Though the Complaint does not provide a specific list of

24 | Plaintiff's personal effects left in the truck, it can be reasonably inferred at the pleadings

25 | stage that Plaintiff brought personal effects to support her transport of the cargo from

26 | California to South Carolina. *See Mollett*, 795 F.3d at 1065 (the court must accept all

27 | well-pleaded factual allegations as true and construe the complaint in the light most

28 | favorable to the non-moving party).

1    Regarding the extraterritorial application of § 2802, the Court concludes that

2  § 2802 applies to Plaintiff's claim based on the facts of this case. As California courts

3  have noted, this provision of the Labor Code applies to expenses incurred by employees

4  in the course of business-related travel. For example, in *Gattuso v. Harte-Hanks*

5  *Shoppers, Inc.*, the California Supreme Court reviewed the scope of § 2802, noted the

6  legislative history of the statute "to prevent employers from passing their operating

7  expenses on to their employees," and noted state administrative interpretations,

8  including reimbursement for "damages or loss due to accident." 42 Cal. 4th 554, 562-66

9  (2007). The California Supreme Court concluded, among other things, that a reasonable

10  interpretation of the statute's language included a requirement that an employer "fully

11  reimburse its outside sales representatives for the automobile expenses they actually

12  and necessarily incur in performing their employment tasks." *Id.* at 567. Based on the

13  principles espoused in *Gattuso*, it can be inferred that § 2802 applies here to the

14  reimbursement of expenses incurred outside of California, where those expenses were

15  "actually and necessarily incur[red]" by Plaintiff in the performance of her duties

16  transporting cargo from California to other parts of the country. *See Gattuso*, 42 Cal. 4th

17  at 567. Thus, as with Plaintiff's § 201 claim, Plaintiff's reimbursement claim applies

18  extraterritorially because it presents the "the kinds of California connections" that suffice

19  for extraterritorial application. *See Bernstein,* 3 F.4th at 1143-44.

20    Further, California Labor Code § 2802 applies to Plaintiff because, though she

21  does not perform a majority of her work in any one state, she is based in California, was

22  hired in California by Defendant, and presented herself to Defendant in California to

23  begin her work. *See Ward*, 9 Cal. 5th at 755-56. As in *Ward*, the purpose of § 2802, the

24  general protective nature of the wage and hour laws, and Plaintiff's status as an

25  interstate transportation worker based in California support extraterritorial application

26  here. *See id*. at 752-55.

27        3.    Retaliation, Cal. Labor Code § 1102.5(b)

28    California Labor Code §1102.5(b) prohibits an employer from retaliating against

1   an employee "for disclosing information . . . to a person with authority over the employee

2   or another employee who has the authority to investigate, discover, or correct [a]

3   violation or noncompliance . . . with a local, state, or federal rule or regulation." To

4   establish a prima facie case of retaliation under § 1102.5(b), a plaintiff must show:

5   (1) she engaged in protected activity, (2) she was thereafter subjected to adverse

6   employment action by her employer, and (3) causation. *Ferretti v. Pfizer Inc.*, 855 F.

7   Supp. 2d 1017, 1025 (N.D. Cal. 2012) (quotations omitted).

8        First, other California courts examining this statute have concluded that nothing in

9   the language of § 1102.5 indicates the California legislature's intent for the statute to

10  apply extraterritorially, and this Court concurs. *See Leibman v. Prupes*, 2015 U.S. Dist.

11  LEXIS 80101, at *18-19 (C.D. Cal. June 18, 2015). Further, courts examining California's

12  retaliation-based causes of action focus on "whether the individual's work had a

13  substantial connection to California through the (1) situs of employment and (2) material

14  elements of the cause of action." *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *3

15  (E.D. Cal. Feb. 8, 2023).

16       For situs of employment, the court in *Sexton* noted *Ward's* test concerning

17  interstate transportation workers. 2023 WL 1823487 at *3-4. Here, as described above,

18  Plaintiff is an interstate transportation worker "who [does] not work more than half the

19  time in any one state," who "performed some work in California," and who used

20  California as "the physical location where [she] presents [] herself to begin work." *Ward*,

21  9 Cal.5th at 755.

22       Even more than situs of employment, courts have consistently found that "the

23  location where the termination decision was made" to be "a crucial element of the claim

24  because this decision gives rise to the liability of the conduct." *Sexton,* 2023 WL

25  1823487, at *4. For example, in *Sexton*, the court concluded that the claim for retaliation

26  under California's Fair Employment and Housing Act ("FEHA") could not stand against a

27  defendant who decided to fire the plaintiff in Florida, finding "the conduct that gave rise

28  to liability did not take place in California." *Id.*

1    Similarly, the court in *Elzeftawy v. Pernix Group, Inc.* found that the plaintiff's

2    retaliation claim under the California Labor Code § 1102.5 could not stand where the

3    plaintiff was injured in South Korea and the decision to fire him was made at the

4    defendant's headquarters in Illinois. 477 F. Supp. 3d 734, 781-83 (N.D. Ill. 2020).

5    Though the *Elzeftawy* court dismissed the plaintiff's § 1102.5 retaliation claim on

6    different grounds, it found "nothing to suggest that Section 1102.5 permits extraterritorial

7    application, and [the plaintiff] has failed to plausibly connect either his place of

8    employment or [the defendant's] alleged unlawful retaliation to California." *Id.* at 783

9    (citing *Oman, et al. v. Delta Air Lines*, 889 F.3d 1075, 1079 (9th Cir. 2018) ("[I]f the

10   liability-creating conduct occurs outside of California, California law generally should not

11   govern that conduct.") and *Weinberg v. Valeant Pharmaceuticals Int'l*, 2017 WL

12   6543822, at *6 (C.D. Cal. Aug. 10, 2017) (noting that the § 1102.5 claim was predicated

13   on retaliatory decision-making that occurred outside the state)). Likewise, in *English v.*

14   *General Dynamics Mission Sys.*, the court dismissed the plaintiff's multiple retaliation-

15   based claims because the decision to fire her was made in Georgia, not California. 2019

16   U.S. Dist. LEXIS 79025, at *17-18 (C.D. Cal. May 8, 2019) (dismissing FEHA retaliation

17   and § 1102.5 "whistleblower protection act" retaliation claims on similar grounds).

18   Here, the Court concludes that California Labor Code § 1102.5 does not apply to

19   Plaintiff's retaliation claim. Like the cases described above, Plaintiff was terminated in

20   South Carolina, not in California, and Plaintiff has not alleged any facts suggesting that

21   Defendant's decision to terminate Plaintiff was made in California or tied to California. In

22   fact, Plaintiff explicitly alleges that Defendant decided to terminate her in South Carolina

23   when she arrived at Defendant's facility on March 15, 2024. Compl. ¶ 17. Because the

24   Complaint does not allege that the decision to terminate Plaintiff was made in California,

25   but instead alleges that it was made in South Carolina, the Court dismisses Plaintiff's

26   retaliation claim based on California Labor Code § 1102.5. *See Sexton,* 2023 WL

27   1823487, at *3-4; *Oman*, 889 F.3d at 1079; *Elzeftawy*, 477 F. Supp. 3d at 781-83;

28   *English,* 2019 U.S. Dist. LEXIS 79025 at *17-18.

23

1           4.     Wrongful Termination in Violation of Public Policy

2         Finally, the Court turns to Plaintiff's wrongful termination in violation of public

3 policy claim. Before considering the extraterritorial analysis, the Court first addresses

4 Plaintiff's contention that her claim arises under federal law. Plaintiff argues that her

5 claim is predicated on her complaints regarding the truck's non-compliance with

6 49 C.F.R. § 570.57. Pl. Opp. at 14. This federal regulation sets forth requirements and

7 exceptions applicable to "vehicles with air brake and air-over-hydraulic brake systems."

8 While the federal regulation may serve as the basis for the violation of public policy, the

9 regulation itself does not provide a cause of action for Plaintiff for wrongful termination

10 and does not transform Plaintiff's claim into one arising under federal law. *See Lawrence

11 v. BNSF Ry. Co.*, 2016 WL 6993566, at *3 (E.D. Cal. Nov. 30, 2016) ("Basing a state law

12 claim on a federal public policy does not by itself invoke federal question jurisdiction

13 [because] when state and not federal law underlies a claim, referencing federal policy in

14 the complaint does not transform the state claim into a federal claim for relief. *Rains v.

15 Criterion Sys., Inc.*, 80 F.3d 339, 346-47 (1996) (plaintiff's reliance on the federal policy

16 embodied in Title VII as a basis for a state wrongful discharge claim did not create

17 federal-question jurisdiction); *see also Campbell v. Aerospace Corp.*, 123 F.3d 1308,

18 1315 (9th Cir. 1997) (plaintiff's reliance on federal False Claims Act as basis for a state

19 wrongful termination claim did not raise federal question jurisdiction)."). This authority

20 arises under California common law.

21         In *Tameny v. Atl. Richfield Co.*, the California Supreme Court stated that "when an

22 employer's discharge of an employee violates fundamental principles of public policy, the

23 discharged employee may maintain a tort action and recover damages traditionally

24 available in such actions." 27 Cal.3d 167, 170 (1980). To state a *Tameny* claim, a

25 plaintiff must allege facts indicating (1) she was employed by the defendant, (2) the

26 defendant discharged her, (3) a violation of public policy substantially motivated the

27 discharge, and (4) the discharge caused harm to her. *Zolensky v. Am. Medflight, Inc.*,

28 2017 WL 1133926, at *6 (E.D. Cal. Mar. 27, 2017) (quoting *Diego v. Pilgrim United

1    *Church of Christ*, 231 Cal. App. 4th 913, 920 (2014)). Courts have long held that a

2    protected activity under *Tameny* can include reporting of violations of federal regulations

3    or other occupational safety concerns. *See Montag v. Aerospace Corp.*, 94 F.3d 652

4    (9th Cir. 1996) (finding allegations that the plaintiff was terminated for bringing to his

5    employer's attention violations of federal regulation); *Lindland v. TuSimple, Inc.*, 2022

6    WL 19001977, at *5 (S.D. Cal. Dec. 19, 2022) (finding *Tameny* action could be based on

7    terminated plaintiff's reporting of employer's violation of regulations promulgated by the

8    National Highway Transportation Safety Administration); *Frazier v. United Parcel Serv.,*

9    *Inc.*, 2005 WL 1335245, at *12 (E.D. Cal. May 3, 2005) (finding the plaintiff's reporting of

10   a malfunctioning brake system could support a claim under *Tameny*). Here, Plaintiff has

11   sufficiently alleged the third element—a violation of public policy (the truck's non-

12   compliance with a federal regulation) substantially motivated the discharge.

13          Despite this, the language of *Tameny* indicates that the source of an employee's

14   claim for wrongful discharge arises from California common law. *Tameny*, 27 Cal. 3d at

15   172-78 (stating that "[a]n employee discharged for refusing to engage in illegal conduct

16   at his employer's request may bring a tort action for wrongful discharge," and discussing

17   the common law origins of this claim in California). The California Supreme Court stated

18   the employer's obligation to not discharge an employee in violation of public policy

19   "reflects a duty imposed by law upon all employers in order to implement the

20   fundamental public policies embodied in the state's penal statutes.") *Id.* at 176. Based on

21   these principles, courts have noted that a claim for wrongful termination in violation does

22   not "arise" under federal law for removal purposes. *See Lawrence*, 2016 WL 6993566 at

23   *3. Thus, the Court must examine whether California law should be applied

24   extraterritorially to Plaintiff's wrongful termination claim.

25          The analysis is similar to the analysis of whether California law applies to

26   Plaintiff's retaliation claim. Plaintiff was terminated in South Carolina, not in California,

27   and Plaintiff has not alleged any facts suggesting that Defendant's decision to terminate

28   Plaintiff was made in California or tied to California. In fact, Plaintiff explicitly alleges that

1  Defendant decided to terminate her in South Carolina when she arrived at Defendant's

2  facility on March 15, 2024. Compl. ¶ 17. Because the Complaint does not allege that the

3  decision to terminate Plaintiff was made in California, but instead alleges that it was

4  made in South Carolina, and this fact is "a crucial element of the claim because this

5  decision gives rise to the liability of the conduct," *Sexton,* 2023 WL 1823487 at *4, the

6  Court concludes that California law does not apply extraterritorially to Plaintiff's wrongful

7  termination in violation of public policy claim and dismisses this claim. *See English,* 2019

8  U.S. Dist. LEXIS 79025 at *18 n. 22 (finding the plaintiff's wrongful termination in

9  violation of public policy claim was based on the same underlying conduct as the FEHA

10  wrongful termination claim, and determining both claims could not apply extraterritorially

11  because the decision to fire the plaintiff was made in Georgia, not California); *see also*

12  *Wood v. iGATE Techs., Inc.*, 2016 WL 3548410, at *6 (N.D. Cal. June 30, 2016) (finding

13  *Tameny* claim arose out of state law, and geographical limitations inherent in the claim

14  barred extraterritorial application where the plaintiff was not a California wage earner).

15  **IV.    CONCLUSION**

16       Defendant's motion to dismiss (ECF No. 11) is GRANTED IN PART and DENIED

17  IN PART. For the reasons stated above, the Court finds it has personal jurisdiction over

18  Defendant, and venue is proper in this district. Further, Plaintiff's claims for failure to pay

19  final wages under California Labor Code § 201 (third cause of action) and failure to

20  reimburse business expenses under California Labor Code § 2802 (fourth cause of

21  action) may proceed, while the retaliation claim under California Labor Code § 1102.5

22  (second cause of action) and wrongful termination claim (first cause of action) are

23  dismissed.

24

25  Dated:  September 16, 2024

26                                                    CHI SOO KIM
                                                      UNITED STATES MAGISTRATE JUDGE
27

28  3, hill.1751